UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EVELYNN LOOMIS,

                           Plaintiff,         **COMPLAINT**

      -against-                     PLAINTIFF DEMANDS
                                                   A TRIAL BY JURY

OSM AVIATION SH US INCORPORATED,
individually and d/b/a "OSM AVIATION, INC.,"
NORWEGIAN AIR RESOURCES SHARED
SERVICE CENTER US CORP.,
PHILLIP VILLANI, individually, and
VANESSA COLLADO, individually,

                            Defendants.

------------------------------------------------------------------X

      Plaintiff, EVELYNN LOOMIS (hereinafter referred to as "PLAINTIFF" or "LOOMIS"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants OSM AVIATION SH US INCORPORATED, individually and d/b/a "OSM AVIATION, INC.," (hereinafter referred to as "OSM"), NORWEGIAN AIR RESOURCES SHARED SERVICE CENTER US CORP., (hereinafter referred to as " NORWEGIAN AIR"), PHILLIP VILLANI (hereinafter referred to as "VILLANI"), and VANESSA COLLADO (hereinafter referred to as "COLLADO") (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff EVELYNN LOOMIS brings this action against Defendants, charging that Defendants violated Plaintiff's rights under the Americans with Disabilities Act of 1990

("ADA"), New York State Human Rights Law; New York Executive Law, § 290, et seq.("the Executive Law"); and the Administrative Code of the City of New York 8-107 et seq. ("NYCHRL"), based, upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated by her employer on the basis of her disability along with a hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under the Americans with Disabilities Act. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted herein.

4. On or about March 8, 2019, Plaintiff submitted a Complaint with the New York State Division of Human Rights ("Division").

5. On or about February 5, 2020 Plaintiff was issued an Order granting Dismissal for Administrative Convenience.

6. On or about May 27, 2020, Plaintiff was issued a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission.

7. Plaintiff satisfied all administrative prerequisites and has filed this case within ninety (90) days of receiving the Right to Sue Letter.

8. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

9. Plaintiff EVELYN LOOMIS (hereinafter referred to as "Plaintiff" or "LOOMIS") is an individual woman who is a resident of the State of Colorado, Adams County.

10. Plaintiff suffers from Chronic Lymphocytic Leukemia ("CLL") and Thrombocytopenia, both of which are qualifying disabilities under the ADA.

11. CLL is a type of cancer of the blood and bone marrow that causes extreme fatigue, frequent infections, and autoimmune problems. In many cases including Plaintiff's CLL causes Thrombocytopenia, a condition characterized by abnormally low blood platelet count.

12. At all times material, Defendant OSM AVIATION SH US INCORPORATED (hereinafter referred to as "OSM") is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of New York,

13. At all times material, Defendant NORWEGIAN AIR RESOURCES SHARED SERVICE CENTER US CORP. (hereinafter referred to as "NORWEGIAN AIR") is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of New York.

14. At all times material, Defendant OSM and NORWEGIAN AIR were joint employers of Plaintiff (hereinafter collectively referred to as "Defendant's").

15. At all times material, Defendant's Employee PHILIP VILLANI (hereinafter referred to as "VILLANI") was and is the Human Resources Manager of OSM.

16. At all times material, VILLANI held supervisory authority over Plaintiff, controlling many tangible aspects of Plaintiff's job duties and holding the power to hire and fire Plaintiff.

17. At all times material, Defendant's Employee VANESSA COLLADO (hereinafter referred to as "COLLADO") was and is the Human Resources Coordinator of OSM.

18. At all times material, COLLADO held supervisory authority over Plaintiff, controlling many tangible aspects of Plaintiff's job duties and holding the power to hire and fire Plaintiff.

19. Upon information and belief, at all times relevant to this Complaint, Defendant's meet the definition of an "employer" under all applicable state and local statutes. At all times material, Defendants had over fifteen (15) employees.

## MATERIAL FACTS

20. On or about July 8, 2017, Plaintiff took and passed a "fitness to fly" medical screening conducted by a physician designated by Defendants, Dr. MARK RUBIN (hereinafter referred to as "RUBIN"). This screening included vision and blood pressure tests, BMI, and height reading, as well as a cardiogram reading.

21. Notably, at the time of screening, Plaintiff had provided RUBIN with an updated report of her health dated June 22, 2017. In the report, her medical practitioner clearly stated Plaintiff's conditions and that she was in total remission.

22. Plaintiff passed her physical as well as the two-week follow up for blood pressure, as noted by Dr. RUBIN, resulting in her official EURASA certification.

23. On or about July 10, 2017, Defendants hired Plaintiff as a Cabin Crew Member with plan to eventually make Plaintiff a Senior Cabin Crew Member after training.

24. On or about November 5, 2017, Plaintiff completed her Senior Cabin Crew Member ("SCCM") Training.

25. Notably, among her class of twelve employees, Plaintiff had the most airline experience.

26. In or around the Spring of 2018, Defendants dramatically changed Plaintiff's flying schedule from approximately eight (8) to ten (10) day long trips, involving three (3) or four (4) layovers for rest, to three (3) day long trips, back to back with no rest time in between.

27. Prior to this dramatic change in flying schedule, Plaintiff had been regularly seen by her oncology doctor, DR. WILLIAM LEE (hereinafter referred to as "DR. LEE"), of National Jewish Oncology. Plaintiff's blood platelet results were consistently good given her conditions.

28. However, following the spring schedule change, Plaintiff's chronic fatigue began to worsen in severity.

29. On or about May 15, 2018, Plaintiff met with DR. LEE regarding her chronic fatigue. DR. LEE performed oncology tests on Plaintiff, the results of which suggested that her current flight schedule was causing extreme and exhaustive stress on her body. Plaintiff's blood platelet count was below 100,000, when the normal range is between 150,000-450,000.

30. DR. LEE stated that if her count decreased any more, Plaintiff would be required to begin specialized treatment.

31. On or about May 16, 2018, Plaintiff left a voicemail for COLLADO to request short term disability leave until June 7, 2018, which was her next scheduled appointment with DR. LEE.

32. Later that same day, COLLADO returned Plaintiff's call and informed Plaintiff that short term disability leave could only be taken in tandem with FMLA, for which Plaintiff was

ineligible as she had been an employee at Defendant OSM for less than one year.

33. COLLADO gave Plaintiff the fax number for the J.F.K. OSM office and told Plaintiff to confer with HR Manager VILLANI and then call her again with an update.

34. Plaintiff then requested that National Jewish Oncology send DR. LEE's not to the OSM office, and they complied.

35. On or about May 17, 2018, COLLADO, VILLANI, and Plaintiff engaged in a conference call to discuss potential options regarding Plaintiff's health situation.

36. After Plaintiff explained her medical situation, VILLANI attempted to force Plaintiff to wait until July. Plaintiff expressed on the phone to VILLANI ad COLLADO that waiting another month was not a feasible option, per her doctor's professional opinion.

37. VILLANI then reluctantly agreed to grant Plaintiff unpaid leave until June 7, 2018, upon receipt of her doctor's note via fax.

38. Plaintiff repeatedly had her doctor's office fax Defendants her doctor's note but Defendants kept insisting that they had not received it.

39. On or about May 21, 2018, Plaintiff contacted COLLADO to inform her that Plaintiff was still scheduled for a trip the following day, May 22, despite their conversation regarding her unpaid leave. COLLADO responded that no doctor's note was received at the OSM office, despite the fact that Plaintiff had her doctor's office fax the note twice. In addition, Plaintiff's absence over the past couple of days were marked unexcused as "NO NOTE."

40. VILLANI finally admitted that he received the third doctor's note but refused to accept it, telling Plaintiff that "the note was vague."

41. The very next day, on or about May 22, 2018, Plaintiff received a notification from

Defendants that she was scheduled as an active crew member for a flight that same night. Defendants told Plaintiff an entire flight was being delayed, because she did not report.

42. Plaintiff contacted COLLADO immediately, who agreed to notify Plaintiff's crew and immediate supervisors of her leave status.

43. When Plaintiff checked her schedule the next day, she was still scheduled for multiple trips between May 23, 2018 and June 7, 2018.

44. On or about June 7, 2018, Plaintiff went to her follow-up oncology appointment. Tests showed that Plaintiff's platelet count had decreased.

45. DR. LEE was unable to give Plaintiff clearance to work that day as she had hoped. Plaintiff was treated and told she would have to wait an additional week to see if her count would increase, and only then would she be fit to fly.

46. Plaintiff notified Defendants of her doctor's decision. In response, Defendants threatened to terminate Plaintiff's contract if she did not supply a doctor's note by June 11, 2018. Plaintiff again supplied a doctor's note.

47. On or about June 8, 2018, at approximately 4:20pm, despite Plaintiff's doctor sending another note, VILLANI left a voicemail for Plaintiff saying no note had arrived at the office, and that he would only be at work another twenty minutes. Plaintiff called National Jewish Oncology to ask if the note was sent. They confirmed that it was sent hours prior and sent another copy immediately.

48. On or about June 9, 2018, the following morning, VILLANI called Plaintiff and accused her of fabricating the doctor's note as well as her medical problem. He made comments such as, "the note is the most unprofessional thing I've ever seen," "you probably had a girlfriend

write it," and "anybody could have written it."

49. Defendants discriminated against Plaintiff on the basis of her disability.

50. VILLANI told Plaintiff he wanted Dr. RUBIN, the OSM practitioner who originally pre-screened Plaintiff prior to the start of her employment, to speak with her doctor personally over the phone. VILLANI further stated that he would only accept a note with a doctor's certification on it.

51. Notably, Plaintiff's doctor's certification number was already on the document.

52. Later that same day, Plaintiff called COLLADO to inform her that an updated note with letterhead was on its way.

53. On or about June 11, 2018, Plaintiff spoke on the phone with MIKE MANZO (hereinafter referred to as "MANZO"), a union representative, in order to file a grievance for VILLANI's discriminatory conduct.

54. On or about June 14, 2018, Plaintiff visited DR. LEE, who checked on Plaintiff's blood platelet count. After the tests proved she was in better health, he cleared her to fly. Plaintiff had her doctor's office fax COLLADO and VILLANI her test results and medical records, along with a note stating she was normal and fit to fly.

55. Plaintiff immediately notified COLLADO as well as the payroll department that she would be returning as soon as possible, and they should be receiving her note of clearance shortly.

56. Plaintiff then emailed COLLADO expressing her excitement to return back to work. COLLADO responded that she would send the records to Dr. RUBIN for review and she would follow up with Plaintiff the following Monday, June 18, 2018.

57. On or about June 18, 2018, COLLADO informed Plaintiff that Dr. RUBIN was not in the

office. Later that same day, Plaintiff checked her schedule to find that all of her trips had been removed up until July 2, 2018.

58. On or about June 27, 2018, COLLADO and VILLANI had a conference call with Plaintiff.

59. On the phone, VILLANI stated that per Dr. RUBIN, "you are not fit to fly due to a pre-existing condition." VILLANI then informed Plaintiff that OSM would need to terminate her contract.

60. Plaintiff then reiterated that her doctor had cleared her to work and that her original medical certificate, signed by Dr. RUBIN, should not be invalidated because of her leave.

61. VILLANI directly referenced Plaintiff's disability during her termination, accusing Plaintiff of intentionally withholding the existence of a pre-existing health condition. Plaintiff reminded VILLANI that she was never asked about any condition, and she had given a doctor's note to RUBIN at the start of her pre-employment screening outlining the current state of her health.

62. Plaintiff then offered to go to another doctor for a second opinion but COLLADO responded, "it's highly unlikely we'll let you return." COLLADO further stated that had they known of her diagnosis then they would have never hired her.

63. In or around July 2018, Defendants terminated Plaintiff.

64. Defendants discriminated against and terminated Plaintiff because of her disability and because Plaintiff complained of and opposed the unlawful conduct of Defendants related to the above protected classes, together with creating a hostile work environment.

65. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

66. As a result of Defendants' discriminatory, retaliatory, and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

67. As a result of Defendants' unlawful, discriminatory, and retaliatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of law, Plaintiff demands Punitive Damages against all Defendants' jointly and severally.

70. Plaintiff claims constructive and/or actual discharge and also seeks reinstatement.

71. Plaintiff claims alternatively (in the event Defendants Claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

72. The above of are just some of the examples of unlawful discriminatory and retaliatory conduct to which Defendants' subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

73. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

74. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

75. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his perceived disability.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

77. Defendants violated the above and Plaintiff suffered damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

78. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

79. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

80. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

81. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

82. Defendants violated the above and Plaintiff suffered damages as a result.

## AS A THIRD CAUSE OF ACTION FOR AIDING & ABETTING UNDER NEW YORK STATE LAW (AGAINST ALL DEFENDNATS)

83. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length.

84. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

85. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling, and/or coercing the discriminatory behavior as stated herein.

86. Defendants violated the above and Plaintiff has suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

87. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length.

88. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, military status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

89. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions, retaliating and otherwise discriminating against Plaintiff because of her disability.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

90. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

91. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

92. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

93. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

94. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

95. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

96. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

97. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION FOR INTERFERENCE
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

98. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise of enjoyment of, any right granted or protected pursuant to this section.

100. Defendants violated the section cited herein as set forth.

101. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION
### FOR SUPERVISOR LIABILITY
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

102. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

103. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

   i. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   ii. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   iii. The employee or agent exercised managerial or supervisory responsibility; or

    iv.    The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    v.    The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

104. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (not against individual defendants)

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. Plaintiff claims Defendants' OSM and NORWEGIAN AIR violated Title I of the Americans with Disabilities Act of 1990 (Pub.L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

107. SEC. 12112. [Section 102] Specifically states "(a) General Rule – No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

108. Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes…. (4) excluding or otherwise denying equal jobs or benefits to qualified individual because of the known disability of an individual with whom qualified individual is known to have a relationship or association."

109. Defendants' OSM and NORWEGIAN AIR violated the section cited herein by failing to accommodate Plaintiff's request for a reasonable accommodation as well as creating and maintaining discriminatory working conditions.

110. Plaintiff hereby makes a claim against Defendants' OSM and NORWEGIAN AIR under all applicable paragraphs of the ADA.

111. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A TENTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
#### (not against individual defendants)

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. SEC.12203. [Section 503] states, "(a) Retaliation – No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

114. Plaintiff opposed Defendants' OSM and NORWEGIAN AIR'S actions, and Defendants violated the section herein by creating and maintaining discriminatory working conditions,

and otherwise discriminating and retaliating against the Plaintiff because of her disability.

115. Defendants violated the above and Plaintiff suffered damages as a result.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues to be tried.

Dated: New York, New York
August 25, 2020

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC.**

By: /s/ Ishan Dave
Ishan Dave Esq.
One Penn Plaza, Suite 4905
New York, N.Y. 10119
(212) 587-0760